Matter of Neiman (2024 NY Slip Op 04347)

Matter of Neiman

2024 NY Slip Op 04347

Decided on August 29, 2024

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 29, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Tanya R. Kennedy,J.P.,
Martin Shulman
Bahaati E. Pitt-Burke
John R. Higgitt
Kelly O'Neill Levy, JJ.

Motion No. 2024-02906 Case No. 2023-02924 

[*1]In the Matter of Jeffrey C. Neiman, an Attorney and Counselor-at Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Jeffrey C. Neiman (Admitted as Jeffrey Charles Neiman) (OCA ATTY. REG. NO. 1710904), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Jeffrey C. Neiman, was admitted, as Jeffrey Charles Neiman, to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on February 25, 1981.

Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York City (Sean A. Brandveen, of counsel), for petitioner.
Peter E. Brill, Esq., for respondent.

Per Curiam 

Respondent Jeffrey C. Neiman was admitted to the practice of law in the State of New York by the Second Judicial Department on February 25, 1981. At all relevant times, respondent maintained an office for the practice of law within the Second Judicial Department. This matter was transferred to this Court in accordance with Rules for Attorney Discipline Matters § 1240.7(a)(2).
On or about June 9, 2023, the Attorney Grievance Committee (AGC) filed a notice of petition and petition of charges in accordance with 22 NYCRR 240.7(d)(2)(vi), 22 NYCRR 1240.8(a)(1) and article IV of the Civil Practice Law and Rules. The AGC sought an order that respondent be disciplined for unethical practices and professional misconduct by, among other things, improperly withdrawing escrow funds, filing frivolous actions, knowingly making false statements, aiding a nonlawyer in the unauthorized practice of law, issuing impermissible referral fees to a nonlawyer, and failing to add a fee-dispute arbitration clause to his retainer agreement.
The AGC and respondent now jointly move under 22 NYCRR 1240.8(a)(5) for discipline by consent and ask this Court to publicly censure respondent.
The parties stipulated to the following facts: Respondent represented an individual named A.M., a disabled person, in civil disputes against multiple New York City businesses. These disputes involved, among other things, those businesses' alleged failures to provide handicap accessibility in violation of the New York City Human Rights Law. A.M. was diagnosed with Bardet-Biedl syndrome which typically causes, among other symptoms, vision loss and delayed development of motor skills such as walking and standing; however, he was able to walk and stand for limited periods of time without the aid of a wheelchair.
A.M. was referred to respondent by an organization called Equal Access Defenders, Inc. (EAD). Respondent first came to know EAD when he responded to its Craigslist ad looking for an attorney. By reviewing the relevant documents, respondent learned that A.M., while being pushed in a wheelchair by a friend, visited at least 112 businesses in Manhattan over the course of seven days between November 2017 and January 2018.
Respondent, without meeting or speaking to A.M., agreed to represent A.M. and signed a retainer agreement that EAD drafted. The retainer agreement did not include a fee-dispute arbitration [*2]clause, as required by 22 NYCRR 1215.1(b)(2), and respondent did not add one at any point before or after A.M. retained him.
The retainer agreement called for respondent to represent A.M. in current and contemplated litigation against 142 New York City businesses. EAD conducted the factual investigations, pre-screened cases, and drafted demand letters and affidavits accompanying the summonses and complaints. Respondent was responsible for reviewing the drafts of the demand letters and pleadings, signing documents, and negotiating settlements.
The demand letters, which were nearly identical, stated that A.M., while using a wheelchair for mobility, was denied access to a particular business in violation of City, State, and federal laws which caused him to be publicly humiliated. To avoid litigation, the letters continued, respondent offered to settle the matter out-of-court for a specified amount. Respondent sent at least 104 of these demand letters between February and April 2018.
Several businesses acquiesced to the demand letters and paid respondent at least $36,900 in aggregate to settle any disputes. At least 49 businesses did not agree to settlement. Consequently, respondent filed lawsuits against these businesses on behalf of A.M. starting in May 2018. Respondent had still not met or spoken with A.M. Each civil complaint respondent filed sought millions of dollars in compensatory and punitive damages for inflicting emotional distress. Respondent filed these lawsuits despite being fully aware that the claims were likely frivolous. He knew that A.M. visited 112 businesses over the course of seven days and the businesses targeted were within a small geographic radius, sometimes only several feet away from each other. Viewed in total, respondent knew A.M. intended to visit these businesses to manufacture as many claims as possible. Moreover, respondent understood that A.M. likely was not emotionally or mentally injured based on the volume and frequency of the visits. Despite this understanding, respondent did nothing to verify the accuracy of the factual representations he made in the demand letters and court filings. Instead, he chose to rely on EAD's investigations.
On or about July 12, 2018, respondent began depositing settlement proceeds he collected from several of the businesses that A.M. visited in his attorney escrow account held with Northfield Bank. Between July 16, 2018 and October 25, 2018, respondent made nine over-the-counter withdrawals, which were not made to named payees, totaling $22,600.
In July 2018, news outlets began reporting about the demand letters sent and lawsuits filed by respondent on behalf of A.M. Only then did respondent begin to interact directly with A.M. Ultimately, respondent withdrew from all 49 pending lawsuits by agreeing to a substitution. Most of the lawsuits have either been withdrawn or have been inactive since November 2018.
Respondent admitted the following violations of the New York Rules of Professional [*3]Conduct (22 NYCRR 1200.00): 1) he filed frivolous actions in violation of rule 3.1(a) when he asserted claims of mental or emotional injury on behalf of A.M.; 2) he failed to add an arbitration clause to his retainer agreement with A.M. in violation of rule 8.4(h); and 3) he failed to make sure that all escrow accounts withdrawals were made only to a named payee and not to cash in violation of rule 1.15(e).
The parties stipulated to the following factors in aggravation: 1) on January 30, 2019, respondent was issued an admonition for failing to provide competent representation in an unrelated matter in violation of rule 1.1(a); and 2) respondent had substantial experience in the practice of law at the time the misconduct occurred.
The parties also stipulated to the following factors in mitigation: 1) respondent voluntarily withdrew from the lawsuits before the AGC informed him that it was investigating his representation of A.M.; 2) he is remorseful for filing frivolous actions; and 3) respondent is a supportive husband and father of three children who is active at his synagogue and provides uncompensated legal advice to individuals.
The parties agree that a public censure is an appropriate sanction in this matter. We find the parties' argument in support of this sanction persuasive. Although respondent filed multiple lawsuits, his misconduct occurred over a short period of time and involved only one client and the same type of claim (see Matter of Weitzman, 202 AD3d 5, 6-9 [1st Dept 2021]). Additionally, rather than doubling down on meritless arguments, respondent voluntarily withdrew from representation before the court, an opposing party, or the AGC intervened (cf. Weitzman, 202 AD3d at 7-8; Matter of Khoudary, 124 AD3d 154, 156 [1st Dept 2014]).
Accordingly, the parties' joint motion for discipline by consent should be granted and respondent publicly censured. The AGC's petition of charges should be denied as moot.
All concur.
Wherefore, it is Ordered that the parties' joint motion pursuant to 22 NYCRR 1240.8(a)(5) for discipline by consent is granted, and
It is further Ordered that respondent, Jeffrey C. Neiman, admitted as Jeffrey Charles Neiman, is hereby publicly censured for his misconduct, and
It is further Ordered that the separately filed petition of charges by the Attorney Grievance Committee for the First Judicial Department is denied as moot.
Entered: August 29, 2024